UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/19
```

TZVEE WOOD, *et al.*,

           Plaintiffs,

-against-

MUTUAL REDEVELOPMENT HOUSES, INC., *et al.*,

           Defendants.

14cv7535 (AT) (DF)

**ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

Given the age of this case and the repeated extensions of the discovery period that this Court has allowed, this Court expressly warned the parties that its last-granted extension was to be considered "final," and that discovery would *not* be extended past September 27, 2019, "absent a showing of extraordinary cause." (Dkt. 177, at 7.) Nonetheless, *pro se* plaintiffs Tzvee Wood ("Wood") and Andrea Malester ("Malester") (together, "Plaintiffs") have sought yet another extension of the discovery cut-off, complaining that misconduct by Defendants' counsel has deprived them of both relevant documents and needed depositions. Plaintiffs have additionally sought leave to amend their Complaint, well past the amendment deadline set by this Court. For their part, Defendants have complained about Plaintiffs' conduct in resisting depositions,[1] and have sought to quash certain non-party subpoenas served by Plaintiffs.

After reviewing the entirety of the lengthy Docket (which contains no fewer than 248 entries), to ensure that this Court is leaving no outstanding discovery dispute unresolved, this

---

[1] It is not clear from Defendants' submissions whether they are joining Plaintiffs' request for a discovery extension, so as to complete the depositions that they have noticed, but this ambiguity has no effect on the Court's rulings herein.

Court concludes that any outstanding motions to compel discovery should be denied and the discovery deadline should not be extended further. In short, the parties have had more than ample opportunity to conduct discovery in this action; this Court could not have been more clear in its warning to the parties that they needed to take seriously the final discovery deadline set by the Court; and the parties have failed to demonstrate either bad faith by their adversaries or any other circumstances that would constitute extraordinary cause to modify that final deadline. This Court further concludes that Plaintiffs have not satisfied the "good cause" standard under Rule 16 of the Federal Rules of Civil Procedure for their belated request to amend their Complaint, and that Defendants have not demonstrated standing to challenge the subpoenas they seek to quash. Accordingly, for the reasons discussed further below, all pending motions before this Court are denied.

### A. Relevant Procedural History

Initially, this Court largely stayed discovery in this action pending resolution of Defendants' motion to dismiss the Complaint. (*See* Dkt. 35.) That motion and a cross-motion by Plaintiffs to amend their Complaint (both of which were delayed by numerous extension requests and other filings) were decided in March 2016 (Dkt. 70), in a decision by the Honorable Analisa Torres that resulted in the dismissal of many, but not all, of Plaintiffs' claims and the denial of their request for leave to amend (*see id.*). Plaintiffs then moved for reconsideration, and, after many additional submissions and extensions of filing deadlines, that motion was, for the most part, denied in March 2017. (Dkt. 111.)

In light of the resolution of the motion to dismiss, this Court lifted the discovery stay on March 8, 2017, and scheduled a case management conference for March 23, 2017. (Dkt. 114.) At that conference, this Court set a deadline of July 7, 2017 for any further motions to amend the

pleadings, and September 15, 2017 for the completion of all fact discovery. (Dkt. 115.) This Court then held follow-up case management conferences on June 21, 2017 (at which it extended Plaintiffs' deadline to file any further motions to amend to August 4, 2017 (*see* Dkt. 116)), and on October 17, 2017 (at which it extended the deadline for motions to amend to November 10, 2017, and the deadline for the completion of fact discovery to January 31, 2018 (*see* Dkt. 126)).

On January 3, 2018, Scott Richman, Esq. ("Richman"), filed a Notice of Appearance on behalf of Plaintiffs (Dkt. 131), and, on February 14, 2018, Defendants' counsel, joined by Richman, submitted a joint proposal to modify the schedule for remaining discovery (Dkt. 135). Counsel represented in their joint submission that "[t]he parties ha[d] discussed their outstanding discovery disputes [and had] exchanged written communications narrowing their demands." (*Id.*) Counsel further indicated that they had "agree[d] that any remaining documents responsive to the communications, to the extent discoverable, [were] to be exchanged on or before April 2, 2018"; that "the parties [would] take depositions of the remaining parties, to the extent required or requested, on or before May 31, 2018"; that "[a]ny post-deposition supplemental discovery demands [would have to] be served on or before June 15, 2018 [with] responses to those demands . . . served on or before July 16, 2018"; and that "the discovery cut-off [should] be set to August 3, 2018." (*Id.*) By Order dated February 22, 2018 (Dkt. 137 (Mem. Endors.)), and in recognition that Plaintiffs had previously been proceeding *pro se*, this Court approved the jointly proposed extensions to the discovery schedule.

On March 22, 2018, however – just one month later – Richman wrote a letter to the Court seeking leave to withdraw from representing Plaintiffs in this action. (Dkt. 142.) While Richman stated in his letter that, during the time he had worked on the case, he had "resolve[d] some discovery disputes with Defendants," he also indicated that plaintiff Wood had been

3

"uncooperative" and that his "conduct ha[d] seriously impaired [counsel's] ability to represent him." (*Id.*) After more filings by the parties, this Court held a conference on September 6, 2018, which was attended by Plaintiffs, as well as by counsel. At that conference, this Court granted Richman's motion to withdraw, and also addressed, on the record, a number of discovery disputes raised by the parties.[2] Of particular relevance, this Court stated that, to the extent Richman, while still acting as Plaintiffs' counsel of record, had proceeded to negotiate certain discovery compromises with opposing counsel – in particular, in a meet-and-confer session between counsel on May 14, 2018 – this Court would not revisit those compromises, but rather would consider Richman's May 14 discovery agreement to be binding on Plaintiffs. As Plaintiffs expressed a lack of understanding as to the scope of that agreement, however, the Court requested that Defendants' counsel clarify this in a further submission.

On October 8, 2018, Defendants' counsel submitted a letter to the Court clarifying that counsel had agreed that Defendants would produce certain categories of documents, rather than respond to Plaintiffs' individual requests (*see* Dkt. 157, at 3-4), and attaching a transmittal letter dated June 29, 2018, which, Defendants' counsel claimed, demonstrated production by Defendants of the agreed categories of documents (*id.*, Ex. A). Plaintiffs, however, made several submissions to the Court disputing Defendants' counsel's representation as to the substance of the agreement that had been negotiated by Richman on their behalf. (*See, e.g.*, Dkt. 162.) In a February 13, 2019 Order, this Court noted that "the precise terms of the May 14 discovery

---

[2] The September 6 conference was electronically recorded, and this Court has reviewed the recording of that conference in connection with the preparation of the within Order. Although none of the parties has apparently requested a transcript of that recording to date, the parties remain free to do so. Instructions for ordering a transcript, with the applicable fee schedule, can be found on the "Courtroom Technology" page of the Court's website, at https://nysd.uscourts.gov/court-tech, under the section entitled "Electronic Court Recording (ECR)."

4

agreement . . . remain[ed] somewhat unclear" and directed both Defendants and Plaintiffs to submit any additional "non-privileged writings (including any emails to or from [Plaintiffs' former counsel]) that memorialize[d] the specific terms" of the agreement. (Dkt. 163, at 1-2.) After Defendants' counsel then submitted certain email exchanges and other correspondence with Richman (Dkt. 164), this Court, by Order dated March 21, 2019 (Dkt. 177), found that those communications appeared to memorialize counsel's agreement "with respect to further responses Defendants agreed to provide to Plaintiffs' outstanding document requests . . . and [that] the responses provided by Defendants in [their] June 29 letter appear[ed] sufficient" (*id*., at 2 (emphasis omitted)).[3]

In its March 21, 2019 Order, this Court also addressed the parties' continued failure to work cooperatively to schedule depositions. On that point, the Court noted the parties' failure to comply with its February 13, 2019 Order, which had required them to submit either a jointly proposed deposition schedule or a list of the witnesses whom any party wished to depose, together with their availability, so that, if the parties were unable to set a schedule, this Court could set one for them. (*Id.*, at 5.) At the close of its March 21 Order, this Court wrote the following:

> [T]his Court will again modify its prior Scheduling Orders (the last of which had set a deadline of January 31, 2018 for the close of all fact discovery (*see* Dkt. 126)) by extending the deadline for fact discovery one last time. All fact discovery, including depositions, shall be completed by September 27, 2019, and this deadline will be considered final, such that it will not be

---

[3] Although not relevant to the disputes currently before this Court, Plaintiffs also disputed what had been agreed by counsel on May 14, 2018 with respect to the materials that *Plaintiffs* were required to produce *to Defendants*, and, in particular, with respect to Plaintiffs' obligation to produce certain audio recordings in their possession. This Court resolved that aspect of the parties' dispute in its Orders dated February 13 (Dkt. 163), March 21 (Dkt. 177), and June 19 (Dkt. 216), 2019, requiring that the audio recordings be produced prior to the depositions of the witnesses whose statements had been recorded.

5

> extended by this Court absent a showing of extraordinary cause. The parties are instructed that depositions should go forward during this period, regardless of whether any party believes that any document production is still outstanding. . . .
>
> . . .
>
> After good faith conference, and no later than April 4, 2019, the parties are directed to provide a stipulated deposition schedule to the Court. If they again fail to do so, then they can be assured that this Court will pick the deposition dates, and, although this Court will attempt to avoid dates that are religious holidays, the dates it selects . . . may not represent the most convenient dates for counsel or any of the parties. Both parties are further cautioned that this Court will no longer tolerate failures by any party to comply, in any way, with Court-ordered schedules, including the deadlines set forth herein. This Court will not be hesitant to sanction parties or counsel, if deadlines are missed without good cause shown. *See* Fed. R. Civ. P. 16(f)(1)(C); *see also, e.g.*, *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("[A]ll litigants, including *pro ses*, have an obligation to comply with court orders." (internal quotation marks and citation omitted)).

(*Id*.) On April 4, the parties submitted a jointly proposed deposition schedule, which the Court "So Ordered." (Dkt. 181 (Mem. Endors.).)

### B. The Matters Pending Before This Court

Given the parties' propensity for making numerous and lengthy filings regarding discovery and other matters, this Court, as noted above, has reviewed the Docket carefully in order to ensure that this Order addresses all disputes that the parties contend are still pending before the Court. While this does not mean that this Court agrees that all of these disputes are open ones, it has nonetheless sought herein to close the door on any matter, within the scope of its reference, that any party has suggested needs judicial attention. These matters are addressed in turn.

### 1. Plaintiffs' Motions To Compel Production of Documents

Although, as set out above, this Court has previously addressed the adequacy of Defendants' production of documents to Plaintiffs, Plaintiffs have continued to assert that such production has been deficient. Liberally construing their submissions, this Court sees two potential arguments that Plaintiffs could be making. First, it appears that Plaintiffs may be arguing that this Court should not have accepted Defendants' counsel's proffer regarding the substance of counsel's May 14, 2018 discovery agreement with Richman, or, alternatively, that, if that agreement was as narrow as Defendants' counsel reported it to be, then the agreement should not have been enforced by the Court, as it would have been unreasonable in light of Plaintiffs' legitimate need for broader discovery in this action. Second, Plaintiffs may be arguing that, to the extent Defendants agreed to produce certain categories of documents, their productions were incomplete as to those agreed categories, such that they should be compelled to produce documents that were allegedly missing.

This Court will not revisit the first of these potential arguments. As noted above, the Court requested and received submissions from the parties regarding the scope of the May 14, 2018 discovery compromises that had been agreed to by counsel, and satisfied itself that Defendants' production, in accordance with those compromises, had been adequate. Plaintiffs have nonetheless maintained that any agreement between counsel reached on May 14 would have applied only to a limited subset of the documents that Plaintiffs had requested, and that counsel had neither addressed nor resolved other outstanding discovery demands. (*See* Dkt. 162, at 4; Dkt. 242, at 6.) Plaintiffs have made these same arguments since the time of the September 6, 2018 conference itself, where the subject of counsel's negotiated discovery compromises was first raised with this Court. Indeed, during the September 6 conference, Plaintiffs expressed their

view that the May 14 agreement, whatever it was, would not have captured their "intent" with respect to additional discovery to which they still believed they were entitled, and would not have accounted for what Plaintiffs' counsel "should have done" in the months following the meet-and-confer – at one point referring to a "vast" quantity of relevant unproduced documents or other discovery. Plaintiffs then continued, over time, to make these and other arguments to challenge this Court's enforcement of counsel's apparent discovery agreement. Most recently, Plaintiffs have sought to shift blame for any inadequate "agreement" from their own counsel to Defendants' counsel, arguing that, "[g]iven defense counsel behavior [sic], it is excessively prejudicial to continue to credit his unsubstantiated claims [about the terms of the agreement,] and any outcome of . . . [the] meet and confer should have been deemed null." (Dkt. 242, at 6.) Having reviewed and considered all of Plaintiffs' oral and written arguments on these points, from the date of the September 2018 conference forward, this Court finds no reason to deviate from its previous ruling regarding the scope of counsel's discovery agreement, and the fact that it should be considered binding on Plaintiffs.

As to Plaintiffs' second potential argument, this Court notes that, at the September 6, 2018 conference, Plaintiffs also complained that, at some point, Defendants had responded to several document requests with general objections, but had still produced some documents responsive to those requests. This Court explained that a party may sometimes state an objection to a discovery demand, but then additionally state that "subject to and without waiver of" that objection, it would nonetheless provide a substantive response, and further explained that responding in that way to a document request would not necessarily signal that any documents were being withheld. Plaintiffs, however, represented to the Court that they had evidence that Defendants were, in fact, withholding responsive documents that they had stated they would

8

produce. Given this representation, this Court permitted Plaintiffs to submit, in writing, a description of the specific instances in which Defendants had produced some documents responsive to a request, but withheld others, together with an explanation of what Plaintiffs believed had been withheld.

Despite this, Plaintiffs have never made a submission to this Court to support their representation that certain documents have been withheld by Defendants from particular categories of otherwise produced documents. Rather, Plaintiffs have made two submissions that challenge, in broad fashion, whether Defendants' written responses to document requests were compliant with the Federal Rules of Civil Procedure. (*See, e.g.*, Dkts. 156, 239 (both containing, without greater specificity, requests for the Court to order Defendants to provide "Rule[-]Compliant Responses," and essentially arguing that Defendants' stated objections to discovery demands have been so inadequate that Plaintiffs cannot even challenge Defendants' responses in substantive terms).) While Plaintiffs have described these two submissions as "pending motions to compel discovery from Defendants" (Dkt. 244), neither was filed as a motion, and neither actually contained any request to compel the production of either specific documents or specific categories of documents that Defendants had agreed, but failed, to produce.

For example, in one of Plaintiffs' submissions, Plaintiffs stated that "some but not all evictions were produced," and that "isolated correspondence about holds was produced but not as a responsive category itself." (Dkt. 156, at 2.) This does not come close to demonstrating (1) that a document request was served on Defendants that covered the documents in question; (2) that Defendants agreed – either in their written response to the request or as part of their negotiated agreement with Plaintiffs' counsel – to produce a category of documents responsive

9

to the request; and (3) that, while some documents that Defendants had agreed to produce were provided, others in the same category were withheld. To the same submission, Plaintiffs also attached a massive Appendix (*see id.*, App'x 1, at 1-8), which contained a supposed "non-exhaustive" list of the documents that Plaintiffs had requested from Defendants and not received. That list, however, does nothing to aid the Court in assessing whether Defendants reneged on any discovery agreement.

Having reviewed Plaintiffs' submissions with an eye toward determining whether Defendants owe Plaintiffs production of any documents that they had agreed to produce, this Court cannot conclude that Plaintiffs have demonstrated that this is the case. Accordingly, to the extent any of Plaintiffs' prior submissions may be construed as motions to compel further document production from Defendants, those motions are denied.

### 2. Motions To Compel Depositions

Is is unclear whether Defendants are still seeking to conduct any depositions, or if the only application before this Court to compel further depositions (and for an extension of the discovery period to accommodate this) is the one made by Plaintiffs. (*See* Dkt. 238.) In any event, and regardless of who may be to blame at this point for the parties' failure to adhere to the Court-ordered deposition schedule that the parties jointly proposed, this Court will neither compel any depositions nor reopen and extend the discovery period.

The deposition schedule to which the parties agreed, and which the Court ordered, dictated that depositions would begin in May 2019, starting with Plaintiffs' depositions, and end in July 2019, when the last of the Defendants would be deposed. (Dkt. 181.) On May 5, 2019, Plaintiffs wrote a letter to this Court, informing it that the parties had stipulated to modify that schedule to push Plaintiffs' own depositions later into the summer, so that Plaintiffs could

attempt to secure representation by *pro bono* counsel for purposes of their depositions. (Dkt. 195.) By written Order dated May 13, 2019 (Dkt. 199 (Mem. Endors.)), the Court approved the stipulated modification of the schedule, but emphasized that, while the parties were free to "stipulate to modify deposition dates previously ordered by this Court, they [were] cautioned that this Court [did] not intend to extend the [September 27, 2019] deadline for the completion of all fact discovery, including depositions." The Court also specifically ruled that, "[i]f *pro bono* counsel [could not] be located by the stipulated deposition dates, then the depositions should still go forward." (*Id.*) Then, in June 2019, Plaintiffs wrote to the Court twice, complaining about various issues that were further delaying the timetable, including purportedly outstanding document discovery and the fact that the *pro bono* attorney who had originally contemplated representing Plaintiffs at their depositions had then decided not to do so. (*See* Dkts. 214, 215.) Most recently, on September 3, 2019, Plaintiffs asked the Court to compel Defendants to appear for depositions, claiming that Defendants' counsel had "[s]quandered [t]ime" and been "[e]vasive" over the preceding months, attaching emails between Wood and Defendants' counsel, and requesting an extension of the discovery deadline from September 27, 2019 to February 10, 2020. (Dkt. 238.)

Plaintiffs accuse Defendants' counsel of engaging in "gamesmanship" and conceiving a "setup to burn up some of Plaintiffs' time" to depose Defendants. (*Id.*, at 2-3.) This Court, however, sees no evidence of any bad-faith tactics on the part of Defendants and finds that, at a minimum, Plaintiffs share in the blame for "burning up" time to conduct depositions. It appears from the emails attached to Plaintiffs' letter, as well as from Defendants' response to that letter (Dkt. 241), that Defendants' counsel had to cancel one deposition (of Wood), one time, on short

11

notice, in August. This single cancellation, though, does not explain why depositions could not have been completed within the extended discovery period.

What *does* appear to explain at least a sizable portion of the delay are Plaintiffs' objections, in June, to having Wood's deposition proceed without counsel or the production of additional discovery (Dkts. 214, 215), even though this Court had expressly cautioned in its March 21 Order that depositions should go forward, "regardless of whether any party believes that any document production is still outstanding" (Dkt. 177, at 8), and had further cautioned, in May, that Plaintiffs' depositions should proceed even if *pro bono* representation could not be secured (Dkt. 199). Defendants' counsel alluded to Wood's objections as the reason for the delay in an August 13, 2019 email, and Wood did not challenge it in his response, nor do Plaintiffs offer a contrary explanation in their most recent letter to this Court. (*See* Dkt. 238.) Furthermore, in an August 19, 2019 email, with over a month remaining before the close of discovery, Wood was already asking Defendants to consent to an extension of the discovery deadline *until 2020*, "[d]ue to the many holidays in October as well as Thanksgiving and conflicts in November and December." (*Id.*) This Court respects Plaintiffs' observance of religious holidays, but Plaintiffs' representation that holidays and other conflicts would have prevented them from conducting any depositions at all for over four months strains credulity and, further, tends to suggest that – despite the Court's explicit and repeated warnings that the final discovery deadline that it set in *March* would not be extended further – Plaintiffs were not serious about meeting the Court's deadline.

In sum, this Court warned the parties multiple times that they had to proceed with depositions, even if Plaintiffs lacked the assistance of counsel or believed they were first entitled to other discovery, and that "this Court [would] no longer tolerate failures by any party to

comply, in any way, with Court-ordered schedules." (Dkt. 177, at 8.) Plaintiffs certainly have not shown that Defendants obstructed the discovery process to an extent that would demonstrate "extraordinary cause" for a further modification of the discovery schedule. Therefore, this Court will not compel anyone to appear for deposition, nor will it, in any other way or for any other purpose, extend the final September 27, 2019 discovery cut-off. If the parties wish to conduct further depositions past the close of the discovery period, then they are free to reach agreement among themselves to do so, but this Court will not be involved in that process.

### 3. Plaintiffs' Request for Leave To Amend Their Complaint

On August 31, 2019, nearly five years after this case was commenced, close to two years after the deadline for motions to amend, and within a month of the final extended cut-off for all discovery in this action, Plaintiffs filed a letter requesting leave to amend their Complaint to include "[i]mplied, [a]mended, [and] [s]upplemental" claims. (Dkt. 237.) Among the claims Plaintiffs now seek to add are implied race-based discrimination and New York property-law claims against the existing Defendants, as well as new discrimination claims against an entity, Penn South Cooperative Federal Credit Union ("Penn South"), that was dismissed from this action by Judge Torres on March 31, 2016. (*See* Dkt. 70.)

This Court explicitly warned Plaintiffs at the September 6, 2018 conference that, as the deadline for amendments had expired on November 10, 2017, any application to amend would need to include a showing, under Rule 16 of the Federal Rules of Civil Procedure, of "good cause" for Plaintiffs' failure to have met that deadline. In their letter motion, however, Plaintiffs have made no effort to satisfy the Rule 16 standard and, instead, cite only to the language of Rule 15, stating that "[a]mendment should be freely granted." (Dkt. 237, at 2-3.)

Rule 16(b) requires the district court to enter a scheduling order that sets a deadline for motions to amend the pleadings, *see* Fed. R. Civ. P. 16(b)(1), (3)(A), and then dictates that the schedule "may be modified only for good cause," Fed. R. Civ. P. 16(b)(4). In light of this Rule, the Second Circuit has held that, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Good cause in this context "depends on the diligence of the moving party," *id.*, and, to satisfy the standard, the movant must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, *see Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met. *Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003); *see also Parker*, 204 F.3d at 340. Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline. *Parker*, 204 F.3d at 340. In the exercise of its discretion, a court may also consider other relevant factors, including whether allowing the amendment would prejudice the opposing party. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Here, Plaintiffs have not provided an explanation as to why they could not have added their purported "implied claims" to the Complaint earlier in this litigation, and thus they cannot be found to have acted diligently with respect to those claims. As to their proposed claims against Penn South, Plaintiffs contend that "new facts have come to light which bolster claims and support new claims." (Dkt. 237, at 3.) These supposed new facts are that Carmen Santiago,

14

a named defendant in this action, also goes by the name Carmen Angelico, and that Carmen Angelico "was a staff member and/or board member of" Penn South. (*Id.*) Plaintiffs do not specify when they discovered these facts, except that it was "[d]uring discovery" (a period that spanned two and a half years), or how they discovered them, such that the Court cannot conclude that Plaintiffs exercised diligence in that regard. As Plaintiffs have not satisfied the good cause standard of Rule 16, this Court need not consider whether their proposed amendment as to Penn South would be permissible under Rule 15. *Parker*, 204 F.3d at 340.

Plaintiffs additionally seek guidance on whether "supplemental claims" can be brought against Defendants in this action based on events that occurred after Plaintiffs filed their Complaint. (Dkt. 237, at 5.) Plaintiffs have not specified what claims they seek to bring or when the events giving rise to them occurred,[4] and as such, this Court cannot determine that there is good cause to add them now.[5] Finally, although Plaintiffs state in their application that an amendment would cause Defendants "no prejudice" because, at the time the application was

---

[4] Plaintiffs did not attach a proposed amended pleading to their letter seeking leave to amend, which, by itself, can be grounds for denying leave. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Nor did Plaintiffs even provide, in their letter, any detail regarding the nature of their newly proposed claims.

[5] Plaintiffs also mention in their letter that Defendants "have argued before the New York State Supreme Court that any and all NY GBL §§ 349-50 claims against it are properly placed here" and seek guidance from the Court on "a means to clarify the scope of those claims in case the Complaint did not adequately plead" them. (*Id.*) This Court cannot discern when Defendants made the argument being referenced by Plaintiffs, precisely what Defendants agued, or what Plaintiffs are now seeking on this point. To the extent Plaintiffs wish to amend the claims that they have already pleaded in this action under Sections 349 and 350 of the New York General Business Law (*see* Dkt. 1 ¶¶ 239-57), so as to remedy potential defects or to expand their allegations, they have not explained this. In any event, this Court notes that the fact that Defendants may have challenged claims raised by Plaintiffs in another forum does not constitute good cause for a belated amendment to the Complaint filed in this Court.

made, the parties were still "in discovery" (*id.*, at 3), this statement obscures the fact that Plaintiffs' request was filed at the very end of an extremely lengthy discovery period.

In sum, although Plaintiffs were warned in September of 2018 – fully a year before this Court's final cut-off date for discovery – that they would need to demonstrate good cause if they wished to make a belated motion for leave to amend, their letter seeking leave to amend fails to do so, and leave is therefore denied.

### 4. **Defendants' Motion To Quash Subpoenas Issued to Nonparties**

On May 15, 2019, Defendants filed a letter motion to quash four subpoenas that had apparently been served by Plaintiffs on various nonparties on April 10 and May 9, 2019. (Dkt. 201.) Arguing that "each of these subpoenas [sought] information that [was] excessive in scope, overly burdensome[,] and beyond the boundaries of what is relevant in prosecuting this action" (*id.*, at 1), Defendants asked that the Court issue an order "withdrawing or severely restricting[] the subpoenas, preventing Plaintiffs from utilizing any of the documents that have been produced to date, and preventing Plaintiffs from obtaining further subpoenas unless on consent or by application to the Court" (*id.*, at 2). Plaintiffs responded on May 29, 2019, with a lengthy submission, in which they argued, *inter alia*, that Defendants lacked standing to challenge the subpoenas. (*See* Dkt. 213, at 1-2.) On this point, Plaintiffs are correct that "[a] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal right or privilege." (*Id.*, at 1 (quoting *Nova Prods., Inc v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004))). As there is nothing in Defendants' May 15 letter that could be construed as claiming any "personal right or privilege" impacted by the information sought in the subpoenas, Defendants' motion to quash is denied for lack of standing.

That leaves the question, however, of whether, if any subpoenaed person or entity did not comply with a subpoena duly served by Plaintiffs, Plaintiffs may still move, at this juncture, to enforce that subpoena. With respect to the four subpoenas referenced by Defendants in their May 15 letter, Plaintiffs suggested in their response that, as of May 29, two remained at issue – one that had been directed to Penn South Cooperative Federal Credit Union and the other to Penn South Social Services. (*See* Dkt. 213, at 3-4.) Plaintiffs, however, never asked this Court to compel compliance, either in their opposition to Defendants' motion to quash, or in any separate motion to compel. Nor have Plaintiffs ever asked this Court to take steps to enforce any other subpoenas that they may have served on other persons or entities, and that may remain outstanding. In this regard, this Court notes that the Docket reflects that, in addition to the four subpoenas addressed by the parties in their May 2019 letters, the Clerk of Court issued another seven subpoenas on Plaintiffs' behalf in the same April-May time frame, as well as another five in September 2019. (*See generally* Dkt.)

The latter cluster of subpoenas, which were issued shortly before discovery closed on September 27, 2019, specified return dates in October 2019 (*see* Dkt. 245, Ex. 1), and are therefore untimely. *See Kelly v. Wright Med. Tech,, Inc.*, No. 00cv8808 (LAK), 2003 WL 40473, at *1 (S.D.N.Y. Jan. 3, 2003) (finding subpoenas untimely when they had been served on the final day of the discovery period, "thus ensuring that [responses] would be received, if at all, only after the conclusion of discovery"); *see also Pasternak v. Dow Kim*, No. 10cv5045 (LTS) (JLC), 2013 WL 1729564, at *1 (S.D.N.Y. Apr. 22, 2013) ("Rule 45 subpoenas have been held generally to constitute discovery, and, therefore, are subject to the same time constraints that apply to all of the other methods of formal discovery." (internal quotation marks and citation omitted)); *Dodson v. CBS Broadcasting, Inc.*, No. 02cv9270 (KMW) (AJ), 2005 WL 3177723,

17

at *1 (S.D.N.Y. Nov. 29, 2005) (noting that subpoenas "may not be used . . . as means to engage in discovery after the discovery deadline has passed." (internal quotation marks and citation omitted)).

Moreover, as to *any* subpoenas that may still be at issue, Plaintiffs have failed to exercise diligence in seeking enforcement. Indeed, Plaintiffs' lack of diligence has been plainly evidenced by their own statements to this Court in a letter dated September 25, 2019, a mere two days before the final discovery cut-off. In that letter (Dkt. 244), Plaintiffs indicated that "outstanding discovery known at this time" included "responses to served subpoenas, including, but not limited to, some which will require a motion to compel due to the subpoenaed parties being non-responsive" (*id.*, at 1). Based on this representation, Plaintiffs cannot be heard to complain that they were unaware that they would need to move to compel compliance, if they wished to enforce any of the subpoenas. It is within the Court's discretion to decline to enforce a subpoena after the close of fact discovery when it is clear that the party issuing the subpoena could have sought enforcement before the discovery deadline, *see, e.g.*, *McDermott v. Liberty Maritime Corp.*, No. 08–CV–1503 (KAM) (ALC), 2011 WL 2650200, at *3 (E.D.N.Y. July 6, 2011) (declining to enforce subpoena following the close of fact discovery, even though subpoena was served before deadline, where party "could have sought enforcement . . . during the discovery period"), and, in the exercise of its discretion here, this Court will not entertain any belated discovery-related motions at this time.

## Conclusion

For the reasons stated above, discovery in this case is closed, and will not be reopened by this Court. Any pending motion by Plaintiffs to compel further document production from Defendants is denied. Any request by any party to compel depositions is denied. Plaintiffs'

request for leave to amend the Complaint is denied. Defendants' motion to quash certain subpoenas (Dkt. 201) is denied. This Court will not entertain any further discovery motions, including any motion to enforce any outstanding subpoenas.

In light of the rulings herein, the Clerk of Court is directed to close the motion filed in this action at Dkt. 201.

If the parties anticipate filing any summary judgment motions, they are directed to confer and jointly to propose a briefing schedule no later than November 26, 2019. If no party plans to file a motion for summary judgment, then the parties should consult Judge Torres' Individual Practices in *Pro Se* Cases with respect to trial submissions.

Dated: New York, New York
November 19, 2019

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Mr. Tzvee Wood
271 Magnolia Blvd.
Long Beach, NY 11561

Ms. Andrea Malester
271 Magnolia Blvd.
Long Beach, NY 11561

Defense counsel (via ECF)