UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TZVEE WOOD and ANDREA MALESTER,

Plaintiffs,

-against-

MUTUAL REDEVELOPMENT HOUSES, INC., et al.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/2021

14 Civ. 7535 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs *pro se*, Tzvee Wood and Andrea Malester, bring this action raising a variety of federal and state law claims against Defendants, Mutual Redevelopment Houses, Inc. ("Mutual"), the City of New York Department of Housing Preservation and Development, Penn South Cooperative Federal Credit Union, and twenty-one individuals, arising from a dispute over Plaintiffs' application to purchase an income-limited apartment from Mutual in Manhattan in 2012. ECF No. 1. On March 31, 2016, the Court dismissed several of Plaintiffs' claims. ECF No. 70. Defendants move to dismiss Plaintiffs' remaining claims pursuant to Federal Rule of Civil Procedure 56. ECF No. 275; Def. Mem. at 1, ECF No. 276. For the reasons stated below, Defendants' motion is GRANTED.

**BACKGROUND**[1]

I.    <u>The Parties</u>

Plaintiffs are both Jewish. Pl. 56.1 ¶ 88, ECF No. 322. Malester is Wood's mother. Def. 56.1 ¶ 8, ECF No. 333. Wood represents that he is a mechanical engineer by trade, Wood Aff. ¶¶ 352, ECF No. 338; Wood Dep. Tr. at 49:5–50:19, ECF No. 275-34, and that he attended five

---

[1] Citations to a paragraph the Rule 56.1 statement also includes the other party's response.

semesters of law school, Wood Aff. ¶¶ 355–56; ECF No. 275-36 at 3.

Mutual Redevelopment Houses, Inc. ("Mutual") is a cooperative real estate property that operates under an agreement with the City of New York (the "City"). Pl. 56.1 ¶¶ 2, 8. Carmen Santiago, Mabel Andujar, Jordan Villines, and Brendan Keany are Mutual employees. *Id.* ¶¶ 11, 16, 17, 30. Keany is Mutual's general manager. *Id.* ¶ 30. Morris Benjamin, Bette Levine, Matthew Barile, Marc Boddewyn, Jeanne F. Brennan, Gena Feist, Brian Hammerstein, Fran Kaufman, Irma P. Lobel, Linda Lowenstein, Walter Mankoff, Jack Raskin, Bridget Oteri Robinson, Robert Sikorski, and Miriam Zwerin were officers and members of Mutual's board of directors.[2]  ECF No. 275-29 at 6; *see* Def. Mem. at 15–16, ECF No. 276.

## II.   Mutual's Policies

Mutual owns and operates buildings containing 2,820 apartments. Def. 56.1 ¶ 1. It is undisputed that Mutual has maximum income requirements. Keany Aff. ¶ 4, ECF No. 275-2; Pl. 56.1 ¶ 185. Although Plaintiffs claim that Mutual "does not have a minimum income for eligibility for housing," they acknowledge that Mutual's agreement with the City states that it is "exclusively for persons or families of *low* or moderate income," not *no* or moderate income. Pl. 56.1 ¶ 179 (emphasis added); ECF No. 334-4 at 9. The record contains multiple documents stating that Mutual has income minimum thresholds. Compl. Exs. 5–6, ECF No. 1 at 76–88; ECF No. 275-31. Santiago and Keany informed Wood of this minimum requirement, of 40 times the carrying charge for an apartment, on multiple occasions. *See, e.g.*, ECF Nos. 275-23 at 3, 275-24 at 3, 275-28 at 6. Keany states that, for prospective applicants who are not able to demonstrate their income eligibility with tax returns, Mutual would consider "proof of what [the prospective applicant] feel[s] makes them eligible." Keany Aff. ¶¶ 4, 10.

---

[2] Brennan, Lobel, and Raskin are three former Mutual directors who died before Plaintiffs initiated this action. *See* ECF No. 7.

III.   <u>Plaintiffs' Dispute with Mutual</u>

On September 28, 2003, Mutual placed an advertisement in The New York Times, stating that its "waiting list for one bedroom and three bedroom apartments" was opening.  ECF No. 275-31.  The advertisement notes that an "[i]ncome and family composition requirement appl[ies]" and lists a maximum and minimum income for a one-bedroom unit.  *Id.*  The advertisement also explains that an applicant's "[p]osition on the waiting list will be determined by lottery supervised by the City of New York and numbered applications will be mailed to applicants."  *Id.*

On March 22, 2004, Wood submitted an application for a one-bedroom apartment.  ECF No. 275-16 at 2.  Mutual contacted Wood on March 26, 2012, when Santiago informed him that he could view 13 apartments.  ECF No. 275-17.  On July 17, 2012, Santiago gave Wood the option to view nine more units, including apartment #11E at 315 8th Avenue (the "Unit").  ECF No. 275-18.  On September 7, 2012, Santiago informed Wood that one of the units he viewed in July 2012 was available.  ECF No. 275-19.  On September 10, 2012, Wood called Santiago and advised that he would get back to her the next day.  Def. 56.1 ¶ 18.  On September 11, 2012, Wood selected the Unit.  *Id.*  The Unit's carrying charge was $505.03.  Pl. 56.1 ¶ 336.

The parties characterize their conversations and correspondence between September 11, 2012, and October 9, 2012, in opposing ways.  Def. 56.1 ¶¶ 19–25, 29–33, 35–41, 44.  However, the parties agree that on September 13, 2012, Wood called Santiago and asked to come to her office on September 19, 2012.  Def. 56.1 ¶ 22.  They also agree that Wood appeared at Santiago's office on September 14, 2012, without an appointment, *id.* ¶ 24, and that Wood and Santiago spoke twice on the phone on September 20, 2012, *id.* ¶¶ 29–30.  The parties also agree that Wood spoke to Keany on September 27, 2012.  *Id.* ¶ 34.

3

The Court examines the letters,[3] and the transcripts of the parties' conversations that Wood recorded, *id.* ¶ 30, to reconstruct the chain of events.  On September 16, 2012, Wood faxed a letter to Santiago, informing her that he would be able to meet with her on September 19, 2012.  ECF No. 275-20.  On September 20, 2012, Santiago left a voicemail with Wood asking him to call her back.  ECF No. 275-21.  That same day, Santiago sent Wood a letter asking him to fax his 2011 New York State tax returns by September 24, 2012, "[i]n order to save time and back and forth telephone calls."  ECF No. 275-22.  Santiago directed that Wood not call Mutual, and stated that they would not discuss his eligibility or the availability of the apartment until he provided a tax return.  *Id.*  That same day, Wood called Santiago, and she explained to him that she needed to see his tax returns before proceeding.  ECF No. 275-33 at 2.  Wood explained that he did not have tax returns, and Santiago asked him what his earnings were for "this year."  *Id.* at 2–3.  Wood responded, "Well, what I'm earning now would qualify, I think."  *Id.*  Santiago reiterated her need for documentation, which Wood further deflected by asking whether the earnings requirement was "40 times maintenance."  *Id.*  Santiago again emphasized her need for documentation showing his income.  *Id.*  Wood responded that he does not have "pay stubs that show year-to-date right now."  *Id.*  Santiago then explained that she would need to see a letter showing his earnings "from the beginning of the year to now[.]"  *Id.* at 3–4.

In a subsequent conversation between Wood and Santiago that same day, Wood continued to question Santiago.  ECF No. 275-24.  He asked her why a statement from his employer was relevant, *id.* at 2, posed two hypotheticals to her, *id.* at 2–3, and further contested the relevance of an income statement, *id.* at 4.

---

[3] All of the parties' letters indicate that they were faxed, except for Mutual's letter dated October 9, 2012.

That same day, after their conversations, Santiago sent Wood another letter asking him to "have [his] employer give [him] a statement with [his] year to date income," in lieu of a tax return.  ECF No. 275-25 at 2.

The next day, instead of submitting the requested documentation, Wood sent Santiago a letter asking for answers to the following questions by that same day:

1) Describe/provide the formula used to determine the minimum income allowed (for eligibility purposes)

2) Describe/provide the formula used to determine the maximum income allowed before the surcharge is added on (for eligibility purposes)

3) What arithmetic method is used to determine the surcharge once the surchargeable income is met (for eligibility purposes)?

4) What numbers are used to determine an applicant's income (for eligibility purposes)?  That is, indicate what data on what lines of the 1040 Individual Tax Return is/are used to determine the applicant's income.  Are certain arithmetic computations performed on this data, entered on the lines of the income tax form, to fulfill a formula?  If so, what are/is the arithmetic computations/formula?

5) When determining the income eligibility of the applicant, do you consider the income to be solely that of the named leaseholder or that of the sum of the income of all the named occupants of the apartment unit?

6) When determining the income eligibility of the applicant, how to you treat student loan funds intended to be for living expenses in regard to the income determination?

7) Please reference what regulation(s) or document(s) you are relying upon in response to each of the above six questions.

ECF No. 275-26 at 2–3.

By letter dated September 23, 2012, Wood stated to Santiago that he was "awaiting [her] reply to [his] letter faxed to [her] office on Friday, September 21, 2012."  ECF No. 275-27 at 4.  In this letter, Wood included a follow-up question:

According to http://www.nyshcr.org/AboutUs/offices/housingoperations/faqs.htm, FAQ #8 "[A]pplicants who do not meet the [minimum income] standard must also be given an opportunity to demonstrate their ability to pay the monthly rent or carrying charge."  How does Penn South make such determinations?  What factors might be considered as to my ability to pay?"

*Id.* (alterations in original).  Again, although Wood states that he "reached out to [his] employer to see what documentation can be provided," this letter did not include any information about Wood's income.  *Id.*

Wood called Santiago on September 25 but she "refused to take [his] call."  Compl. Ex. 2D, ECF No. 1 at 41.

Santiago responded by letter dated September 26, 2012, informing Wood that Mutual had released the Unit on September 24, 2012, and had offered it to the next applicant on the waitlist.  Compl. Ex. 3B, ECF No. 1 at 69.  Santiago explained that as soon as Wood provided the requested information Mutual would proceed with processing his application for the Unit, if still available, or other apartments depending on availability.  *Id.*

On September 27, 2012, Wood responded to Santiago by letter, complaining that Mutual did not provide him with the information he had requested and that he was not given enough time to obtain documentation from his employer.  ECF No. 275-29 at 3.  Wood also disputed the relevance of his tax return and an employer's statement for determining his income eligibility.  *Id.*

On September 27, 2012, Wood called Keany.  Def. 56.1 ¶ 34; ECF No. 275-28 at 2.  Keany informed Wood that "the bottom line is there were documents that [he was] to bring in and [Mutual hasn't] gotten them."  ECF No. 275-28 at 3.  In response, Wood stated, "Let's just start from the beginning.  How do I get the information that I've requested?"  *Id.*  Wood confirmed that he did not have tax returns "for the last couple of years."  *Id.* at 4.  Then, Keany

asked, "Well, now, what is your means of income?" to which Wood responded, "Well, the issue

that we seem to have—where we seem to butt heads, I guess, or where[.]"  *Id.* at 5.  Keany stated

that not showing two years' prior income makes Wood ineligible for the Unit, and asked Wood

"what can [he] provide that will demonstrate to [them], absent tax returns, which [they] really

should get, but if [he] were willing to show [Keany] in some other fashion something that's

meaningful with regard to income for two years, [Keany] is happy to look at it[.]"  *Id.* at 6–7.

Wood then contested whether income from two years ago was relevant, and Keany clarified that

it was.  *Id.*  Keany further elaborated:

> Our contract requires information that you can't provide. And you're getting a
> courtesy whereby we will be willing to take a look at the weighted income and
> some other fashion to try and help you, and then you're sending us a query on a
> whole series of questions that we don't have the time to take out to answer for you.
> And I don't know, even if we were able to answer them, that they would be of much
> value to you anyway.  So the better question, as I said to you before, is what is it
> do you think you can do, rather than us telling you what the standard is and you
> trying to make it up.

*Id.* at 8.  Wood then stated that he had "only just started working," and that he also had "a

secondary way of being eligible with a family member."  *Id.* at 9.  Wood then confirmed to

Keany that he intended to apply for the apartment alone, unless he is ineligible, in which case, he

would like to present alternative scenarios until he is eligible:

> MR. WOOD: Because I would be eligible with a family member, right, which
> the household income meets the requirements, correct?  Hello?
> MR. KEANY: Mr. Wood—
> MR. WOOD: If household income meets the requirements—
> MR. KEANY: You're the applicant for the apartment.  Who's going to live in this
> apartment?
> MR. WOOD: If I have an immediate, eligible family member live in the apartment,
> doesn't that combined income count?
> MR. KEANY: Let me explain to you what we're not going to do here.  What we're
> not going to do here is you're going to try and pick our brains to figure out and then
> you're going to—the question is, who is going to live in the apartment[?]
> MR. WOOD: It depends.  If I'm eligible on my own[—]
> MR. KEANY: Let me finish. Let me finish.  Who's going to live in the

apartment?  What the incomes are?  Then, we'll honor the application.
MR. WOOD: Why can't I present more than one scenario?

*Id.* at 9.  Wood then declared, "I am eligible and I have selected this unit and I will believe that

I'm entitled to it. . . .  You don't know that I'm not eligible."  *Id.* at 10.  Wood further reiterated

his disagreement with Mutual's policies, *id.* at 10–11, and again asked what alternative

documentation he could provide if two years' tax returns are unavailable, *id.* at 11.

That same day, Wood followed up with Keany with a letter, again not attaching any proof

of income, but assuring Keany that Wood's current income "at an annualized rate[,] is in excess

of 40 times annual maintenance."  ECF No. 275-29 at 5.  Wood also "ask[s] that [Keany] discuss

the alternative option in which [Wood] would co-occupy the unit with a family member such that

present and past household income is in excess of 40 times annual maintenance."  *Id.* at 5–6.

By letter dated October 9, Mutual told Wood that as soon as he (1) had been employed

for one year, (2) submitted a state tax return reporting one full year of income, and (3) submitted

a letter from his employer indicating his full-time employment, he would receive a "one time

only apartment offer," the refusal of which would result in Wood being removed permanently

from the waitlist.  ECF No. 275-30 at 2.

During discovery, Wood submitted his earning statements and tax return for 2012.  Wood

Aff. ¶ 2 (stating that Plaintiffs produced documents stamped with Bates numbers beginning with

"P"); ECF No. 275-35 at 2.  These documents show that Wood did not receive his first paycheck

of 2012 until October 12, 2012, and that the earliest date Wood could have worked was

September 15, 2012.  ECF No. 275-35 at 2.

IV.   Procedural Background

On September 17, 2014, Plaintiffs initiated this action.  ECF No. 1.  On September 30,

2014, this Court referred the action to the Honorable Debra C. Freeman for general pretrial

matters.  ECF No. 2.  On April 21, 2015, Judge Freeman stayed discovery pending resolution of

Defendants' motion to dismiss the complaint.  ECF No. 35.  On March 31, 2016, the Court

dismissed five of Plaintiffs' claims, and their claims against Defendants Penn South Cooperative

Federal Credit Union, Michael Schwartz, The City of New York Department of Housing

Preservation and Development, and Joseph Quigley.  ECF No. 70.  On March 1, 2017, the Court

reconsidered its order of dismissal, but, did not reinstate claims against Schwartz, The City of

New York Department of Housing Preservation and Development, and Quigley.  ECF No. 111.

The stay was lifted on March 8, 2017, allowing the parties to conduct discovery on Plaintiffs'

remaining claims.  ECF No. 114.  On March 21, 2019, "given the age of this litigation," Judge

Freeman issued an order extending fact discovery "one last time" to September 27, 2019.  ECF

No. 177 at 7.  Judge Freeman expressly warned the parties that "this deadline will be considered

final, such that it will not be extended by this Court absent a showing of extraordinary cause."

*Id.*  Nonetheless, on September 24, 2019, Plaintiffs sought yet another extension of the discovery

cut-off, complaining that misconduct by Defendants' counsel had deprived them of both relevant

documents and needed depositions.  ECF No. 242 at 5–8.  On November 19, 2019, Judge

Freeman ruled that "discovery in this case is closed, and will not be reopened by this [c]ourt."

ECF No. 249 at 18.  On August 5, 2020, the Court overruled Plaintiffs' objections to Judge

Freeman's order closing discovery.  ECF No. 265.  On October 29, 2020, Defendants moved for

summary judgment.  ECF No. 275.  On November 6, 2020, over a year after fact discovery

closed, and after Defendants submitted their summary judgment motion, Plaintiffs again moved

to reopen discovery.  ECF No. 278 at 6.  Plaintiffs also moved to vacate the Court's March 1,

2017 order and reinstate Schwartz, The City of New York Department of Housing Preservation

and Development, and Quigley.  ECF Nos. 289, 291, 300.  On February 5, 2021, the Court

denied these applications.  ECF No. 302.  In their opposition to Defendants' present motion, Plaintiffs again seek to reopen discovery.  Pl. Opp'n at 1, ECF No. 334.

On September 8, 2020, the Court ordered Defendants to file their motion for summary judgment by October 16, 2020, and ordered Plaintiffs to file their opposition papers by January 18, 2021.  ECF No. 271.  On October 13, 2020, the Court extended Defendants' deadline by ten days.  ECF No. 273.  On October 27, 2020, Plaintiffs filed a letter stating that they "do not oppose" Defendants' new deadline.  ECF No. 274.  On October 29, 2020, Defendants moved for summary judgment.  ECF No. 275.  On January 19, 2021, after the January 18, 2021 deadline to file their opposition papers, Plaintiffs filed a letter requesting until March 25, 2021, to submit their opposition papers.  ECF No. 295.  Two days later, the Court granted their extension request, warning that "[n]o further extensions will be granted."  ECF No. 296.  On March 8, 2021, Plaintiffs moved for another extension of time to file their opposition papers because "[a]ssembling the exhibits will be a significant task because there are thousands of relevant pages" and Plaintiffs "do not have staff."  ECF No. 307 at 4–5.  The Court denied this request. ECF No. 309.  Plaintiffs requested another extension on March 22, 2021, because of Wood's "significant, acute shoulder issues from the amount of computer usage on this motion[,]" ECF No. 311, and the Court again denied that application, ECF No. 312.  On April 8, 2021, Plaintiffs requested another extension, and proposed serving their opposition on April 19, 2021.  ECF No. 313.  On April 22, 2021, Plaintiffs again wrote to extend their opposition deadline to May 3, 2021.  ECF No. 314.  On May 5, 2021, Plaintiffs filed a letter stating that they "have served [their] opposition to Defendants' motion for summary judgment."  ECF No. 316.  However, the Court did not receive this filing.  On July 12, 2021, the Court ordered Plaintiffs to file their opposition papers on the public docket, and reminded them "that failure to file a proper

opposition may result in the Court considering Defendants' motion as unopposed."  ECF No.

324.  Plaintiffs' opposition was filed on the docket on August 3, 2021, 278 days after Defendants

filed their motion.  ECF Nos. 333–39.  Plaintiffs' opposition includes six video files, 21 audio

files, over 1,100 pages of written materials, and over 8,000 pages of exhibits.  *Id.*  Although

Plaintiffs' memorandum in opposition is only one page over the Court's 30-page limit, Pl.

Opp'n, Court's Individual Practices in Civil Cases Rule III.C, it contains 195 footnotes in an

apparent effort to "shorten the filing," ECF No. 307 at 4.

## DISCUSSION

I.    Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine

dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1);

*Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If

the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may

also satisfy its own summary judgment burden by demonstrating that the adverse party cannot

produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo,

Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets

its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of

material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  "Although a

party opposing summary judgment need not prove its evidence in a form admissible at trial or

under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healy v. Chelsea Res. Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990) (citation omitted).  In deciding the motion, the Court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

II.  Analysis

A.  *Pro Se* Deference

*Pro se* plaintiffs are generally afforded a special solicitude because "a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  However, a district court has discretion to determine the level of solicitude to grant a *pro se* plaintiff, based on "the specific procedural context and relevant characteristics of the particular litigant." *Id.* at 101–03 ("[D]istrict courts within this Circuit have developed a practice of withdrawing this solicitude if a *pro se* litigant is deemed to have become generally experienced in litigation through participation in a large number of previous legal actions.").

Aside from four matters brought to date relating to their dispute with Defendants,[4] Plaintiffs have initiated at least eight other cases against defendants ranging from SoulCycle to a roofing company, in state, federal, and administrative courts.[5]  Plaintiffs have been filing

---

[4] *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 19 Civ. 9563 (S.D.N.Y. Oct. 11, 2019); *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 18 Civ. 726 (S.D.N.Y. Jan. 26, 2018); *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 14 Civ. 7535 (S.D.N.Y. Sept. 17, 2014); *Wood v. Mutual Redevelopment Houses, Inc*, Index No. 101354/2018 (N.Y. Sup. Ct. Apr. 1, 2019).
[5] *Malester v. Mauceri*, No. 11 Bankr. 9563 (Bankr. E.D.N.Y. Dec. 27, 2011); *Wood v. City of Long Beach*, No. 10 Civ. 3421 (E.D.N.Y. July 26, 2010); *Malester v. Adamo*, No. 09 Civ. 9347 (S.D.N.Y. Nov. 10, 2009); *Wood v. Gen. Motors Corp.*, No. 08 Civ. 5224 (E.D.N.Y. Dec. 29, 2008); *Wood v. SoulCycle Inc.*, Index No. 100711/2017 (N.Y. Sup. Ct. Mar. 2, 2018) ; *Wood v. City of Long Beach*, Index No. 0011804/2009 (N.Y. Sup. Ct. June 30, 2009); *Wood v. NYU Hosps. Ctr.*, Index No. 0119109/2006 (N.Y. Sup. Ct. Jan. 29, 2008); *Austin Wood ex rel. Tzvee Wood v. Bd.*

12

lawsuits at least since 1999.  *See* note 4.  Moreover, Wood has received a formal legal education—he was "actively enrolled in law school" for five semesters.  Wood Aff. ¶¶ 355–56; ECF No. 275-36 at 3.  Accordingly, the Court remains mindful that Plaintiffs' opposition papers were not prepared by an attorney, however, the Court will not afford Plaintiffs the high degree of leniency usually afforded to *pro se* plaintiffs.  *Tracy*, 623 F.3d at 102 ("[A] lawyer representing himself ordinarily receives no such solicitude at all.").

### B.  Housing Discrimination

Plaintiffs bring claims for religious discrimination, family status discrimination, retaliation, and discriminatory advertising under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, *et seq*.  Compl. ¶¶ 152–66, 176–79, 187–91, 202–04, 221–28.  Plaintiffs also bring claims for religious discrimination, age discrimination, family status discrimination, and retaliation under the New York State and City human rights laws, *id*. ¶¶ 152–58, 176–91, and source of income discrimination under the City human rights law, *id*. ¶¶ 192–201.

The FHA prohibits "refus[ing] to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . religion . . . [or] familial status[.]"  42 U.S.C. § 3604(a); *see also id.* § 3605.  The FHA also makes it illegal "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . religion [or] familial status, . . . or an intention to make any such preference, limitation, or discrimination."  *Id.* § 3604(c).  The FHA further prohibits "represent[ing] to any person because of . . . religion . .

<hr>

*of Educ. of the City of Long Beach*, Decision No. 14,213 (Sept. 23, 1999), *available at* http://www.counsel nysed.gov/Decisions/volume39/d14213.

. [or] familial status . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *Id.* § 3604(d).  The FHA also prohibits retaliation. *Id.* § 3617.

Claims of housing discrimination are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).  Plaintiffs must first establish a prima facie case "by showing (1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers." *Id.*  "To satisfy the 'qualified' element for a prima facie FHA claim, the renter must satisfy the applicable criteria that the owner established." *Kennedy v. Related Mgmt.*, No. 08 Civ. 3969, 2009 WL 2222530, at *4 (S.D.N.Y. July 23, 2009).  "[O]nce a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." *Mitchell*, 350 F.3d at 47 (citing *McDonnell Douglas*, 411 U.S. at 802–03).  "If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." *Id.*  "Summary judgment is appropriate if no reasonable jury could find that the defendant's actions were motivated by discrimination." *Id.*  In addition, where a plaintiff's retaliation claim is "premised on the interference with the enjoyment of a right to be free from discrimination under [§] 3604," that claim "cannot be maintained if the plaintiff does not plausibly allege that he possessed requisite qualifications for the transaction[.]" *Johnson v. Levy*, 812 F. Supp. 2d 167, 179 (E.D.N.Y. 2011) (quotation marks and citation omitted).  New York State and City human rights law "housing discrimination claims are analyzed under the same standard as claims made under the FHA." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d

14

578, 588 (S.D.N.Y. 2012).

Plaintiffs' opposition papers are voluminous, and out of proportion to Defendants' submissions.  *See* ECF Nos. 333–39 (Plaintiffs submitted six video files, 21 audio files, over 1,100 pages of written materials, and over 8,000 pages of exhibits.).  "[I]t is not the role of the Court to search the summary judgment record for evidence supporting a nonmovant's opposition."  *Patacca v. CSC Holdings, LLC*, No. 16 Civ. 0679, 2019 WL 1676001, at *17 (E.D.N.Y. Apr. 17, 2019).  Nevertheless, the Court's extensive review of the record shows that Plaintiffs were not qualified for the Unit.

Wood represented that he wanted to occupy the apartment himself.  ECF No. 275-28 at 9 ("MR. KEANY: You're the applicant for the apartment.  Who's going to live in this apartment? / MR. WOOD: If I have an immediate, eligible family member live in the apartment, doesn't that combined income count? / MR. KEANY: . . . the question is, who is going to live in the apartment[?] / MR. WOOD: It depends.  If I'm eligible on my own[.]").  Mutual requires that the occupant have a minimum income of 40 times the carrying charge to purchase an apartment.  ECF No. 275-23 at 3; *see* Def. 56.1 ¶ 30.[6]  If an applicant cannot meet this threshold, Mutual works with the applicant to determine whether he can qualify based on other financial factors.  Keany Aff. ¶¶ 4, 10.

The letters and recordings Defendants submit show that Wood did not provide any paperwork verifying that his income met this threshold, despite being given multiple opportunities to do so.  ECF Nos. 275-19–275-30.  Santiago initially requested that Wood

---

[6] Although Plaintiffs claim that Mutual "does not have a minimum income for eligibility for housing," they acknowledge that Mutual's agreement with the City states that it is "exclusively for persons or families of *low* or moderate income," not *no* or moderate income.  Pl. 56.1 ¶ 179.  Plaintiffs' plain assertion that Mutual does not have a minimum income requirement contradicts the facts they present and is insufficient to create a genuine issue of fact.  *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." (quotation marks, citation, and ellipsis omitted)).

provide tax returns to verify his income, but he could not produce those.  ECF No. 275-23 at 2.

Santiago then asked Wood for a "year-to-date stub" instead, which he also did not have.  *Id.* at 3.

Next, Santiago asked Wood to submit a letter from his employer showing his year-to-date

earnings.  *Id.* at 4.  Instead of providing this, or any other financial information, Wood evaded

questions about his income, posed hypotheticals, asked for a variety of information from

Defendants, including the formula used to determine income eligibility, and argued that

Defendants' income policy was flawed.  ECF No. 275-24 at 2–4 (Wood posed hypotheticals to

Santiago in response to her asking for documentation of his income.); ECF No. 275-25 (Santiago

wrote to Wood, asking him to "have [his] employer give [him] a statement with [his] year to date

income" since he "ha[s] no tax returns[.]"); ECF No. 275-26 (Wood responded to Santiago,

asking for responses to a variety of questions about Defendants' income calculation process and

attaching no information regarding his income.); ECF No. 275-27 at 4 (Wood followed-up with

Santiago asking additional questions and providing no documentation regarding his income.).

On September 26, 2012, Santiago wrote to Wood, informing him that the Unit had been released,

but explaining that, as soon as Wood provided the requested information, Mutual would proceed

with processing his application.  Compl. Ex. 3B.  In response, Wood again failed to comply.

ECF No. 275-29 at 3.  Instead, he complained that Mutual did not provide him with the

information he had requested, that he was not given enough time to obtain documentation from

his employer, and that his tax return and an employer's statement were irrelevant.  *Id.*

Wood then spoke with Keany, who again gave Wood opportunities to present qualifying

financial information.  ECF No. 275-28 at 3–5 ("MR. KEANY: Well, now, what is your means

of income? / MR. WOOD: Well, the issue that we seem to have—where we seem to butt heads, I

guess, or where"); *id.* at 6–7 ("MR. KEANY: And if you don't have two years prior [income] to

show us, then the problem is that, technically, you're not eligible. . . . the better question is, what can you provide that will demonstrate to us, absent tax returns, which we really should get, but if you were willing to show me in some other fashion something that's meaningful with regard to income for two years, I'm happy to look at it. . . . if you have no income, sir, you're not eligible to move in."); *id.* at 9 ("MR. WOOD: . . . I've only just started working"); *id.* at 10 ("MR. WOOD: . . . What [Santiago] asked for is not relevant.").  Wood's continued refusal to provide Santiago or Keany with any documentation about his income despite multiple opportunities to do so mirrors Plaintiffs' contumacious behavior in delaying to respond to Defendants' present motion.

Given Wood's failure to produce documentation of his income, on October 9, 2012, Mutual placed his application back on the waiting list until Wood demonstrates that he has maintained employment for one full year, submits New York State tax returns with one full year of income, and submits a letter from his employer indicating that he is a full-time employee. ECF No. 275-30 at 2.  To date, Wood has not met those requirements.  Wood Aff. ¶ 375.

During discovery, Plaintiffs submitted Wood's earning statements and tax return for 2012, Wood Aff. ¶ 2, ECF No. 275-35, which establish that Wood did not meet Mutual's income threshold.  Wood did not receive his first paycheck of 2012 until October 12, 2012, days after Defendants' October 9, 2012 letter.  ECF No. 275-35 at 2.  His earnings statement shows that the earliest date Wood could have worked was September 15, 2012.  *Id.*  In 2012, Wood earned a total of $6,505.  *Id.* at 12.  Because the Unit's carrying charge was $505.03, Pl. 56.1 ¶ 336, an occupant would need to show an income of at least $20,201.20.  Based on this record, no reasonable juror could find that Wood was qualified to purchase the Unit.

Plaintiffs argue that Defendants discriminated against Malester based on her source of

income.  Pl. Opp'n at 13–16.  However, Wood represented that he intended to apply for the Unit himself.  ECF No. 275-28 at 9.  Malester also confirms that she never provided Defendants with information about her source of income in 2012.  Malester Aff. ¶ 29, ECF No. 339.  Without knowing her source of income, Defendants could not have discriminated against Malester based on her source of income.

Plaintiffs' argument that Santiago and Keany "deviated in process" because Plaintiffs are Jewish and "us[ed] tax returns as a cover for anti-Semitism" also fails.  Pl. Opp'n at 4–5. Plaintiffs can identify only one applicant who Mutual accepted with an income of $0.  *See* Pl. Ex. 20, ECF No. 334-31 at 2.[7]  However, that applicant provided Mutual with other financial information that Wood refused to submit.  Pl. Ex. 26 Part 107_b at D8470–86 (student applicant with no income provided tax returns of both parents and personal checking and savings account information).  Plaintiffs also identify applicants with incomes below Mutual's stated threshold. Pl. Ex. 20.  However, in order for Plaintiffs to gather information about these applicants' incomes, the applicants would have needed to submit financial information to Mutual.  Indeed, Defendants stated in their responses to Plaintiffs' first set of interrogatories that, "[t]o Defendants' knowledge, all prospective tenants, except for Tzvee Wood, have timely submitted copies of their income tax returns and/or proof of employment and/or income."  Pl. Ex. 1 Part 1, ECF No. 334-1 at 11.  Because Mutual requires financial information from its applicants and Wood refused to provide any, he was unquestionably unqualified.

Accordingly, Defendants motion as to Plaintiffs' FHA, and New York State and City

---

[7] Plaintiffs purport to identify another such applicant who was accepted with $0 in income.  Pl. Ex. 20 at 3. However, this is inaccurate.  Mutual's records show that this applicant became an occupant in 1962 and that his income dropped to $0 in 2016.  Pl. Ex. 26 Part 78_a at D5584, D5610, D5625, D5640.

human rights law claims is GRANTED.

      C.   New York General Business Law

New York General Business Law § 349 ("NYGBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"  NYGBL § 349(a).  To bring a *prima facie* case of deceptive business practices under § 349, a plaintiff must demonstrate "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  "The standard for recovery under [NYGBL] § 350, while specific to false advertising, is otherwise identical to [§] 349."  *New World Sols., Inc. v. NameMedia, Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (quoting *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002)).  Therefore, the Court will use the same analysis for each claim.

Defendants' advertisements and acts were not deceptive or misleading in a material way. Defendants' September 28, 2003 advertisement states that an "[i]ncome and family composition requirement apply" and lists a maximum and minimum income range for a one-bedroom unit. ECF No. 275-31 at 3.  Plaintiffs argue that, because the advertisement mentions "household income," the advertisement was misleading because Wood was "require[ed]" to apply without Malester.  Pl. Opp'n at 27.  However, Wood intended to apply for the apartment alone, without Malester.  ECF No. 275-28 at 9.  Plaintiffs further contend that Defendants' advertisement misrepresented their method for processing waitlisted applicants.  Pl. Opp'n at 27–28.  The Court disagrees.  The advertisement states that an applicant's "[p]osition on the waiting list will be determined by lottery supervised by the City of New York and numbered applications will be mailed to applicants."  ECF No. 275-31 at 3.  This statement is not "likely to mislead a

reasonable consumer acting reasonably under the circumstances." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).

Accordingly, Defendants' motion for summary judgment on Plaintiffs' NYGBL claims is GRANTED.

III.   Additional Applications

Plaintiffs request additional discovery pursuant to Federal Rule of Civil Procedure 56(d). Pl. Opp'n at 1. Summary judgment should be denied or deferred "where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Delphi-Delco Elec. Sys. v. M/V Nedlloyd Europa*, 324 F. Supp. 2d 403, 417–18 (S.D.N.Y. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)); *Holmes v. Lorch*, 329 F. Supp. 2d 516, 528–29 (S.D.N.Y. 2004). The decision to defer summary judgment is within the Court's discretion. *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 126–27 (S.D.N.Y. 2013).

The record is robust and clearly shows that Wood was not qualified to purchase a Mutual apartment. Wood represents that more discovery is necessary to corroborate statements in Santiago's and Keany's affidavits. Wood 56(d) Aff. ¶¶ 3, 46, ECF No. 335 (Santiago and Keany "asserted multiple claims for the first time which were not provided in Defendants' interrogatory responses."). Plaintiffs also request additional discovery to "refute new claims by the Defendants that Plaintiffs were financially ineligible." *Id.* ¶ 49. However, Defendants told Wood that he was not financially eligible for the Unit in 2012. ECF No. 275-28 at 7 ("[I]f you have no income, sir, you're not eligible to move in."). And, as discussed, the documentary

evidence shows that Wood was not qualified to purchase an apartment—even if Plaintiffs received all the additional discovery sought, they do not explain how the additional discovery would create an issue of material fact.  *See Deutsche Bank Tr. Co. Ams. v. Rado Ltd. P'ship*, No. 18 Civ. 6768, 2019 WL 4038761, at *8 (S.D.N.Y. Aug. 27, 2019).  Accordingly, Court denies Plaintiffs' request.

Plaintiffs also request leave to amend their complaint "as the [C]ourt believes is required."  Pl. Opp'n at 1 n.1.  Leave to amend a complaint "shall be freely given when justice so requires," and it is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  If an amendment is futile, "it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

The documents both parties submitted show that Wood was not qualified to purchase the Unit, and any amendments to the complaint would be futile.  Accordingly, Plaintiffs' application is DENIED.

The Court has considered the remainder of Plaintiffs' applications and finds them to be without merit.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 275 and 277, to mail a copy of this order, and all unpublished opinions cited therein, to Plaintiffs *pro se*, and to close the case.

SO ORDERED.

Dated:  September 14, 2021
        New York, New York

ANALISA TORRES
United States District Judge

21